No. 34,471

THE RITTENOURE INVESTMENT COMPANY, *Appellant,* v. J. E. BIRNEY et al., *Appellees.*

(95 P. 2d 299)

Opinion filed November 10, 1939.

*R. F. Crick, M. C. Bucklin,* both of Pratt, and *A. M. Cowan,* of Wichita, for the appellant.

*H. E. Crosswhite,* of Topeka, and *E. R. Barnes,* of Pratt, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action for an injunction. At the time the petition was filed the district court issued a temporary injunction, but later, on hearing of a proper motion therefor, the temporary injunction was dissolved. The plaintiff appeals from that order.

Omitting formal allegations, it was alleged in the petition filed May 1, 1938, that the city of Byers, under date of November 1, 1919, issued electric light bonds totaling $7,500 due November 1, 1939, and that under date of November 1, 1925, it issued electric light transmission bonds totaling $9,000, due serially; that plaintiff was the owner of thirteen bonds totaling $6,500 of the first issue, and of seven bonds due serially from February 1, 1938, to February 1, 1944, both inclusive, totaling $3,500 of the second issue; that these bonds constituted a statutory lien on all real property in the city of Byers, no part had been paid and all constituted legally outstanding obligations. It was further alleged that the total sinking fund for the retirement of the bonds was $——, the amount being left blank; that the assessed valuation of the city for 1938 was $67,214, and from information obtained from the county clerk of the county plaintiff believed it would be less for 1939; that the city had a population of 186 persons and for some years certain buildings and improvements had been moved out of the city and consequently assessed values had been shrinking, and that the removals had reached such proportions plaintiff's investment had become jeopardized and would be further jeopardized by the threatened removal of the dwelling house referred to later; that defendant Birney had recently purchased two described lots on which there was located a dwelling house of the value of $1,500 or more, and that the lots and improvements had been assessed as of March 1, 1939, on which assessment a levy would be made for payment of the principal and interest on the bonds; that Birney and others had commenced to remove the house to some location outside the city, and that the removal would reduce the property within the city liable for taxation, and that if the defendants were not restrained they would remove the house, to the irreparable damage of plaintiff. This petition was amended to show that there were 208 separate tract valuations in the city and that there were unpaid taxes on 169 of the tracts, many of the unpaid taxes running back as far as 1917 to 1920; that taxes of past years and one-half of the 1938 taxes were paid on twenty-three of the tracts and all taxes were fully paid on sixteen of the tracts. Statements with reference to personal-property tax will not be repeated here. The record does not disclose that any evidence was taken either when the temporary injunction was issued or when the motion to dissolve it was heard, and the cause is before us on the allegations of the petition only.

The appellant recognizes the real question is whether the petition states a cause of action. In consideration of that question we note there is no allegation that interest on all bonds outstanding has not been fully paid, no allegation that any demand was made for payment of the principal of the two bonds which the allegations show to have matured when the present action was filed; no allegation that any proceedings had been brought to reduce to judgment any claim on account of matured bonds; no allegation that the amount in the sinking fund was not sufficient to retire such bonds as were matured; no allegation as to the assessed value of the particular dwelling house involved, either separately as an improvement or in connection with the real estate on which it stood, nor any allegation that the taxes on the lots and house owned by defendant Birney were not fully paid. Owing to the manner in which the appeal is presented and to the further fact the record does not disclose any reason the trial court may have assigned for its ruling, we shall not treat separately the effect of the lacking allegations, contenting ourselves with mentioning some of them in the treatment of other matters involved.

In its brief appellant states it has not been able to refer to any precedents directly in point. It argues by analogy and directs our attention to a statute providing that bonds of any county or township shall be a lien upon the real estate of the county or township (G. S. 1935, 10-1001) and to the case of *Comm'rs of Sedgwick Co. v. Bunker*, 16 Kan. 498, 504, wherein it was said that when a debt against a county is created, the taxable property becomes liable to pay the same and that the real estate is permanently liable. Our attention is also directed to G. S. 1935, 10-112, which provides that all municipal bonds shall be a general obligation of the municipality issuing the same, and it is contended that this statute in effect makes the same rule apply to cities as by statute expressly applies to counties and townships. If the above be fully correct, it does not provide such a measure that, without more, it may be said the county, township or city, much less a bondholder, may prevent an owner of two tracts of land from removing improvements on one tract and placing them on the other. If the analogy and the implications made were literally true, an owner could not tear down any building owned by him or any part of it, nor could he do anything with it which the county, township, city or municipality conceived might make the real estate less valuable. In theory they, or any of them, could prevent waste of any sort; they could keep prop-

erty in a static situation from the time the bonds were issued until they were paid. If that is to be the law the legislature should positively so declare.

It requires no review of our statutes to show that plaintiff's bonds are to be paid out of taxes; that after the bonds were issued, the proper officers were by statute enjoined to provide a sinking fund to pay the principal and to make appropriate levies to pay the interest. Neither need we go into detail to show that if the officers were negligent and the sinking fund was not provided, or was for any reason insufficient, the bondholder might reduce his claim to judgment and compel the making of a levy to pay it. In any event the bonds must be paid from taxes. Waiving for present purposes any discussion of the lack of pertinent and necessary allegations in plaintiff's petition, the burden of its complaint was the removal of the house in question would cause it irreparable injury because taxes in the city have been allowed to remain delinquent, and it is to be inferred nothing had been done about it, and that continuance of that condition was such that, coupled with the threatened removal of the house from real estate, on which so far as the records show the taxes were fully paid, plaintiff's investment had been and was jeopardized.

Assuming sufficiency of the petition, it discloses a situation somewhat comparable to that considered in *Crawford County Comm'rs v. Kurent*, 138 Kan. 556, 27 P. 2d 226, when the county attempted to enjoin the defendant from mining coal upon lands which had been sold for delinquent taxes, the claim being that the mining operations destroyed the value of the lands. In discussing the county's right, attention was directed to the rule stated in *Ness County v. Light & Ice Co.*, 110 Kan. 501, 503, 204 Pac. 536, that:

"The entire subject of taxation is statutory; the method prescribed for the recovery of delinquent taxes is statutory, and it does not exist apart from the statute." (Syl. ¶ 2.)

After calling attention to statutory rights of the county to enforce its tax lien and to acquire title and right to possession, it was said:

"As it is, the county has neither title nor right to possession such as is necessary to support a suit against the owner to enjoin acts impairing or destroying the value of real property. (*Warner v. Pile*, 105 Kan. 724, 185 Pac. 1041; *Douglass, Guardian, v. Dickson*, 31 Kan. 310, 1 Pac. 541; 40 Cyc. 525.)" (*Crawford County Comm'rs v. Kurent*, 138 Kan. 556, 557.)

It may be observed that the rule there relied upon has been approved in the more recent cases of *Sarver v. Sarver Oil Co.*, 141 Kan.

246, 248, 40 P. 2d 394, and *Bachman-Wise Motor Co. v. Comanche County*, 143 Kan. 346, 349, 54 P. 2d 965.

The Crawford county case presented a situation much stronger from that plaintiff's standpoint than does the one we are now considering. There the plaintiff was the one charged with the duty of levying and collecting taxes, here the plaintiff can benefit only from the performance of such duties; there the taxes were delinquent and the property had been sold, here there is no showing that the taxes on the particular property have not been fully paid.

So far as the record discloses, at the time the petition was filed the bondholders had received every cent of interest that was due them; two bonds were due, but there was no showing that any demand for their payment was made, or that if they had been presented for payment there was not plenty of money in the sinking fund to pay them, or if not, that any effort had been made to reduce them to judgment to form the basis for a judgment levy. Insofar as collecting bonds then matured is concerned, plaintiff had a plain and adequate remedy. As far as the outstanding, unmatured bonds are concerned, plaintiff pleads the bold conclusion that its security will be jeopardized by the removal of an improvement from one tract of the 208 tracts in the city. This conclusion is not supported by any allegation of fact—the assessed value of the improvement is not shown, nor is the assessed value of the improvement and the real estate upon which it stands. Assuming that under any circumstances plaintiff could maintain an action to prevent waste, the petition now before us fails to show any right to relief.

The order of the trial court dissolving the temporary injunction is sustained, and its judgment affirmed.