Nos. 42,664 and 42,783 (Consolidated)

JOHN J. ROBERTSON; E. A. SMITH; SHERMAN E. SMITH; MAX V. SCHRIER; EVERETT N. MITCHELL; CHARLES V. DARNALL; WALTER E. DARNALL; LEWIS WOODARD and MAY WOODARD, his wife; BEN J. FUNK and LORA B. FUNK, his wife, *Appellees*, v. MARGARET LEMMON; PAULINE JACK; WILLIAM F. JACK and LENA CLAIRE JACK, his wife, *Appellants*.

(371 P. 2d 175)

Opinion filed May 5, 1962.

A. R. Lamb, of Coffeyville, argued the cause, and *Paul A. Lamb*, of Coffeyville, was with him on the briefs for the appellants.

*Gerald Cauldwell,* of Sedan, argued the cause and was on the briefs for the appellees, Ben J. Funk and Lora B. Funk.

*John M. Wall,* of Sedan, argued the cause and was on the briefs for the appellees, Lewis Woodard and Mary Woodard.

The opinion of the court was delivered by

PARKER, C. J.: This is an action brought by the owners of an oil and gas lease to determine the owners of the mineral interests in certain real estate, and the ownership of the one-eighth royalty interest due and payable under the terms of such lease.

The petition alleged in substance that plaintiffs are the owners of an oil and gas lease on the Southwest Quarter (SW¼) of the Southeast Quarter (SE¼) of Section Seven (7), Township Thirty-five (35) South, Range Twelve (12) East of the Sixth Principal Meridian, Chautauqua County, Kansas; that under the terms of the lease, plaintiffs are obligated to pay a royalty interest of an undivided one-eighth to the persons who are the owners of such royalty interest, but because of the conflicting claims between the owners plaintiffs do not know and are unable to ascertain the owners of such royalty interest. The petition asked that all the defendants be required to set up their purported claims, that the court determine their interests and bar all of the defendants from claiming any other right, title or interest therein.

The defendants, Ben J. and Lora B. Funk, answered alleging they had acquired the entire mineral interest by a sheriff's deed in a tax foreclosure action. The defendants, Lewis and May Woodard, answered alleging they are the owners of a one-half interest in the minerals which was conveyed to them by the Funk's. Any controversy heretofore existing between the Funks and the Woodards has been settled and they now appear in these appeals as appellees, having filed a joint counter-abstract and brief.

The defendants, Pauline Jack, William F. and Lena Claire Jack, husband and wife, and Margaret Lemmon, answered alleging that they owned an interest in the minerals, which was later stated by their counsel to be a total of three-tenths. They now appear as appellants in these appeals, claiming that, as they had no notice of the tax foreclosure proceedings and were not made parties, their interests could not be foreclosed.

The original plaintiffs have maintained an impartial attitude throughout all of the proceedings, including these appeals.

The facts alleged in the various pleadings are not disputed. A

brief review of such facts, as gleaned from the pleadings, may tend to simplify the issues.

W. F. Lemmon owned the mineral interest in the land in question. He died and, under the residuary clause in his will, the mineral interest passed to numerous persons including these appellants. His will was admitted to probate in Montgomery County, Kansas, on September 30, 1931, and the estate was finally settled on May 25, 1933. On May 6, 1933, the will was recorded in the probate court of Chautauqua County. The specific interests claimed by appellants were never made a matter of record nor listed for taxes as provided by G. S. 1949, 79-420 (now G. S. 1961 Supp., 79-420).

The appellants never paid any taxes, never exercised any control and, according to statements made in the briefs which are not denied, made no claim to such mineral interest until, or shortly before, the petition was filed in this action on June 8, 1960.

On May 25, 1936, three of the beneficiaries under the will of W. F. Lemmon conveyed a three-fourths interest in the minerals to C. R. Ross. On May 26, 1936, another beneficiary conveyed a one-fourth interest in the minerals to C. R. Ross. Ross exercised full ownership over the mineral rights, all of which were listed for taxation in his name, and paid all taxes thereon until the year 1944, when such taxes became delinquent.

On October 7, 1953, an action was filed in the name of the Board of County Commissioners for Chautauqua County, Kansas, for the foreclosure and sale of the mineral interests in question. The petition alleged that C. R. Ross was the owner of the mineral interests and that Ross Oil and Gas Company and Chautauqua County claimed some interest in them; that they were unpaid taxes, describing them, levied against such mineral interests for the years 1944, 1945, 1948, 1950, 1951 and 1952. Service was made by publication upon the above named defendants, naming them, and "all other persons who are or may be concerned." The publication described the mineral interest being foreclosed and gave the amount of delinquent taxes due upon it. On January 21, 1954, the district court of Chautauqua County entered its order finding that there was unpaid taxes upon the mineral interest; that the owners and claimants were as set out in the petition; foreclosed the lien for taxes, and ordered the property sold to satisfy the costs and lien. On February 8, 1954, an order of sale was issued to the Sheriff of Chau-

tauqua County. Following publication of the notice of sale, describing the mineral interest, naming C. R. Ross as the owner and the amount of taxes and costs due, such Sheriff proceeded to sell the mineral interest on March 16, 1954, to the appellee, Ben J. Funk. On May 13, 1954, the district court of Chautauqua County confirmed the sale and ordered the Sheriff to execute and deliver a deed to the purchaser at the tax sale. On May 15, 1954, a sheriff's deed was delivered to Ben J. Funk and Lora B. Funk.

The controversy was presented to the district court on pretrial conference, at which time it was agreed that the court should first determine the effect of the tax foreclosure action. On April 15, 1961, the court filed a memorandum opinion in which it stated:

"It is the opinion of the court that the determination of one question fully disposes of the case and that the consideration of other questions presented is not necessary. The particular question involved is whether the interests of defendants Pauline Jack, William F. Jack and Margaret Lemmon were extinguished by the sale of the mineral rights involved under the tax foreclosure proceedings stipulated to as having taken place at the time and in the manner stated into the record. It is the opinion of the court that the interests of the said defendants were extinguished."

Judgment was entered in accordance with the memorandum opinion and a separate appeal perfected therefrom was here docketed as Case No. 42,664. A subsequent appeal from the trial court's order overruling a motion for a new trial was here docketed as Case No. 42,783. Later the appeals were consolidated.

Appellants, conceding that their contentions constitute a collateral attack on the tax foreclosure judgment, present the following questions for appellate review.

"Can an interest in real estate be extinguished in a tax foreclosure suit in which the known owners of such interest are not made parties to the tax foreclosure suit?

"Does a sheriff's deed issued in a tax foreclosure proceeding purporting to convey the interest of owners of real estate who are not parties to the foreclosure proceeding become final and absolute after the lapse of twelve months under Section 79-2804 (b), G. S. 1949, and if this section be so construed, does it violate the Constitution of the State of Kansas and the Constitution of the United States?"

We will first consider the statutes relating to the taxation of real estate and proceedings to collect such taxes.

G. S. 1949, 79-101, reads:

"That all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

G. S. 1949, 79-1804 [now G. S. 1961 Supp. 79-1804], provides:

"All taxes shall be due on the first day of November of each year. A lien for all taxes shall attach to the real property subject to the same on the first day of November in the year in which such tax is levied, and such lien shall continue until such taxes and penalty, charges and interest which may have accrued thereon, shall be paid by the owner of the property or other person liable to pay the same: . . ."

G. S. 1949, 79-2301, *et seq.*, contains provisions for the sale of real estate for taxes.

Proceedings to enforce a lien for unredeemed real estate bid in by the county by judicial foreclosure and sale are provided by G. S. 1949, 79-2801, which states in part as follows:

"That in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale and shall remain unredeemed on the first day of September of the third year after such sale, or any extension thereof as provided in section 79-2401a of the General Statutes Supplement of 1947 or any amendments thereto, the board of county commissioners shall order the county attorney and it shall be the duty of the county attorney to institute an action in the district court, in the name of the board of county commissioners, against the owners *or supposed owners* of such real estate and all persons having or claiming to have any interest therein or thereto, . . ." (Emphasis supplied.)

Appellants' contentions apply chiefly to the interpretation of G. S. 1949, 79-2804b, which, insofar as here material, provides:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale made under the provisions of section 79-2803 of the General Statutes Supplement of 1947 or amendments thereto, or any sale made under the provisions of section 79-2804 of the General Statutes Supplement of 1947 or any amendments thereof, but every such action or proceeding, including those brought to set aside judgments on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within twelve months after the date the sale of the real estate, which was affected by such judgment, order of sale or sale, was confirmed by the court. The time limitation herein fixed for the bringing of any such action or proceeding shall be construed as a condition precedent to the bringing of any such action or proceeding and shall not be construed as a statute of limitations. . . ."

The appellants contend that the provisions of the above statute do not apply to owners who were not made parties to the tax foreclosure action.

We cannot agree with appellants' contention. The language used in the statute is clear and requires no interpretation. The time limitation is a condition precedent to bringing the action. Every

action brought to set aside a tax foreclosure judgment must be brought within twelve months after the date the sale was confirmed by the court. The contention of the appellants might have been proper if addressed to the district court in a timely proceeding to vacate or set aside the tax foreclosure judgment.

The court, as early as 1880, in *Pritchard v. Madren,* 24 Kan. 486, held:

"Where the statute expressly authorizes service by publication of notice to all parties interested in lands upon which tax liens are sought to be foreclosed, such service must be held sufficient to sustain the jurisdiction, although the owner be a resident of the county, and not personally named in the notice, or otherwise served with process. *Gulf R. Co. v. Shepard,* 9 Kan. * 647; *Fudge v. Fudge,* 23 Kan. * 416.

"Under said chapter 39, a failure to state the name of the true owner of the land in the petition and judgment will not vitiate the proceedings or render the judgment void." (Syl. ¶¶ 5, 6.)

Later in *Sheridan County Comm'rs v. Acre,* 160 Kan. 278, 160 P. 2d 250, we reached conclusions of law similar to those announced in the *Pritchard* case and, in doing so, said:

"The legislature also provided (G. S. 1943 Supp. 79-2804b), that legal or actionable proceedings may be brought to open, vacate, modify or set aside any judgment in a tax foreclosure action, or any sheriff's sale in such an action. So, the legislature, recognizing the difficulty the county attorney might have to ascertain the owner, or supposed owner, or the names of all persons having or claiming an interest in the property, provided that any party to the action might file an answer which would present his claim to such ownership or interest, and then gave an additional time of six months for the bringing of an action to open, vacate, or modify the judgment. The appellee here took no advantage of any of the provisions of the statute above mentioned for its benefit in that regard . . ." (p. 287.)

The question remains, does this strict application of the statute violate the due process clause of the Federal Constitution or Section 2 of our Bill of Rights?

We must answer this question in the negative. A tax levied on an interest in real property is levied against the property. It is not a personal charge against the owner. However, every owner knows, or if not by virtue of existing law is bound to know, that a tax will be levied against all real property; that if the tax is not paid it will become a lien against the property; that in due time the tax lien will be foreclosed; and that in due time the property will be sold and he will have but twelve months after the sale is confirmed to challenge the proceeding.

The tax statutes, to which we have previously referred, give the owner of real property notice of the steps that will be taken in the levy and collection of taxes. If the owner sees fit to neglect the payment of the taxes he knows to be due, the duty is imposed upon him to watch the various tax proceedings and protect his interest. No other actual notice is required. (*Consolidated Motors, Inc. v. Skousen*, 56 Ariz. 481, 109 P. 2d 41, 132 A. L. R. 1040, 1045.)

An action to foreclose a tax lien is a proceeding *in rem* against the property. Here the property was properly described in the petition and in the publication notice.

The appellants rely chiefly on the case of *Walker v. Hutchinson City*, 352 U. S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200. The case is not a precedent for the question now before us. There the court was dealing with a condemnation case. The owner had no reason to anticipate that his land was being condemned and proper notice was necessary.

The well-considered case of *Phillips Petroleum Co. v. Moore*, 179 Kan. 482, 297 P. 2d 183, appears to be decisive of the question now under consideration. Therefore we quote at length from the opinion, which reads:

"The constitutionality of statutes prescribing the method of collection of taxes, under which personal notice of the pendency of such proceedings has not been given, has been challenged from time to time on the ground that they violate the due process clause of the federal Constitution. Such statutes have been uniformally sustained on the ground that the proceedings for the collection of taxes are *in rem*, and require no personal service of notice upon the owner or lienor of the land.

"In *Winona & St. Peter Land Co. v. Minnesota*, 159 U. S. 526, 537, 538, 40 L. Ed. 247, 16 S. Ct. 83, Mr. Justice Brewer said:

" '. . . That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribes the court in which and the time at which the various steps in the collection proceedings shall be taken a notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law.' ( Citing cases.)

"In *Leigh v. Green*, 193 U. S. 79, 48 L. Ed. 623, 24 S. Ct. 390, the Supreme Court of the United States, in effect, held: Due process of law is not denied the holder of a lien on real property by the lack of any provision for personal service on him of notice of the pendency of proceedings *in rem* to enforce the lien acquired by a purchaser of the property at a tax sale, which are authorized by the Nebraska statutes, where notice is given by publication to all persons interested in the property to appear and set up their claims. ( L. Ed. headnote No. 2.)

"In *Ballard v. Hunter*, 204 U. S. 241, 51 L. Ed. 461, 27 S. Ct. 261, it was, in effect, held: Due process of law does not require that the nonresident owners of lands within a levee district should have personal notice of the pendency of a suit to collect the levee taxes assessed upon their lands. (L. Ed. headnote No. 5.)

"We hold neither the due process clause of the federal Constitution, nor section 2 of our Bill of Rights was violated when service by publication was obtained upon Phillips, and the notice given in the tax foreclosure action under 79-2801 and G. S. 1949, 60-2525, *et seq.*, was such as to be reasonably calculated to apprise Phillips of the pendency of the action and afford it an opportunity to defend." (pp. 489, 490.)

Based on what has been heretofore stated and held we conclude that neither the due process clause of the Federal Constitution nor Section 2 of the Kansas Bill of Rights was violated by the provisions of G. S. 1949, 79-2804b, limiting the time for challenging a tax foreclosure judgment to twelve months after the date the sale of the real estate was confirmed, even though the parties challenging the proceedings were not named in the petition or publication notice.

It follows the trial court did not err in rendering the judgment appealed from in Case No. 42,664 or in its order overruling the motion for a new trial in Case No. 42,783. Therefore the judgment and the order overruling the motion for a new trial must be affirmed.

It is so ordered.